**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**


**MICHAEL TYSON**                                                                 **PLAINTIFF**


**VERSUS**                                         **CIVIL ACTION NO. 2:07cv75KS-MTP**


**JONES COUNTY, MISSISSIPPI; CHRIS SMITH; LARRY
HAYES; AND RANDALL PARKER IN THEIR OFFICIAL
CAPACITIES AS EMPLOYEES OF JONES COUNTY**                **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#62]** filed on

behalf of Jones County, Mississippi.  The court, having reviewed the motion, the

response, the pleadings and exhibits on file and being otherwise fully advised in the

premises finds that the motion is well taken and should be granted.  The court

specifically finds as follows:


## FACTUAL BACKGROUND

The plaintiff contends that on or about September 10, 2005, he called the Jones

County Sheriff's Department for assistance because armed men were chasing him on

his property.  The plaintiff contends that when the dispatched Jones County officers

arrived, he was taken into custody by Chris Smith as well as other unnamed employees

of Jones County, Mississippi, or the Southeast Mississippi Drug Task Force.  The

plaintiff asserts that he was handcuffed and assaulted by being struck by the butt of a

pistol and that the offices beat and kicked him.  The plaintiff also alleges that he was

placed in the back of a car and told that he would be killed if he ever told anyone what happened.  The plaintiff was then taken to the Jones County Jail where he was booked on charges of trespass, assault and on outstanding warrants for contempt of court for failure to pay fines.  At some point, he was taken to South Central Regional Medical Center for emergency treatment where he received stitches for a laceration on his head. After paying the outstanding fines, the plaintiff was released and, apparently, no action was ever taken on the assault or trespass charges.

Tyson has sued Jones County and Deputies Chris Smith, Larry Hayes and Randall Parker in their official capacities as employees of Jones County.  Tyson alleges these officers acted in reckless disregard of his health, safety and well-being when they handcuffed him, beat him and "threatened him with death should he reveal what had happened to him."  Tyson asserts no claims against the officers individually, however; instead he is apparently seeking only damages from Jones County premised upon 42 U.S.C. § 1983 and *respondeat superior* liability under the Mississippi Tort Claims Act .

The plaintiff's amended complaint alleges that Jones County became liable to him under § 1983 by "creating an atmosphere that authorized and encouraged" the violations of his civil rights, by "failing to have in place policies and procedures to protect" his rights and by "failing to properly supervise" its officers.  However, the defendant asserts that the recent deposition testimony of Tyson demonstrates that he has no evidence to support these assertions and that he is wholly unable to meet his burden of proving the elements of his case.  Thus, according to the defendant, lacking substantive proof to support his claims, Tyson cannot withstand Jones County's motion for summary judgment.

2

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one

3

of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting*

4

*Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary

judgment motion, one may not rely on mere denial of material facts nor on unsworn

allegations in the pleadings or arguments and assertions in briefs or legal memoranda.

The nonmoving party's response, by affidavit or otherwise, must set forth specific facts

showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also,*

*Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the]

court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents

merely filed and those singled out by counsel for special attention-the court must

consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting

*Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).


### LIABILITY UNDER 28 U.S.C. § 1983

The plaintiff must establish, as a prerequisite to maintaining a Section 1983

claim, the following:

> (a) that the defendants were acting under color of state law, and

> (b) that while acting under color or state law, the defendants violated rights
> of the plaintiff that are protected by the United States Constitution or laws
> of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535; 101 S.Ct. 1908, 1912; 68 L.Ed.2d 420 (1981);

*Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir. 1984).  There is no dispute that the

officers sued were acting under color of state law at all times complained of in their

respective positions as law enforcement officers of Jones County, Mississippi.  Further,

the plaintiff has alleged violations of rights on the part of the defendants protected by

5

the United States Constitution and laws of the United States.

The plaintiff's Complaint contains allegations that appear to allege excessive force on the part of Smith during and after his arrest.  He also attempts to graft these allegations to the county by way of asserting a failure to supervise and/or train.  The Fifth Circuit has instructed that "[t]he constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."  *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996)(citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).  In *Hare* the Fifth Circuit also held "that both medical care and failure-to-protect cases should be treated the same for purposes of measuring constitutional liability."  *Id.*

Further,  when "a pretrial detainee's claim is based on a jail official's episodic acts or omissions, . . . the proper inquiry is whether the official had a culpable state of mind in acting or failing to act[,]" and that "a standard of deliberate indifference [is] the measure of culpability for such episodic acts or omissions."  74 F.3d at 643.  Restated, the court held "that the episodic act or omission of a state official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs."  *Id.* at 647-48.

When a plaintiff alleges that actions taken by officials were done because of a failure to train or supervise or pursuant to policies that violate his constitutional rights, the plaintiff must show (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exist between the failure to train or supervise in the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to

deliberate indifference.  *Smith v. Brenoettsy*, 158 F. 3d 908, 911-12 (5th Cir. 1998).

Supervisory officials cannot be held liable under 42 U.S.C. § 1983 for the actions of

subordinates nor can municipalities be held responsible for constitutional violations by

their employees on any theory of vicarious or *respondeat superior* liability.  *City of*

*Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).


### Section 1983 and Municipal Liability

The Fifth Circuit discussed the standard to govern the imposition of municipal

liability in Section 1983 actions in *Webster v. Houston*, 735 F.2d 838, 841 (5th Cir.

1984):

> A municipality is liable under Section 1983 for a deprivation of rights
> protected by the Constitution or federal laws that is inflicted pursuant to
> official policy.  Official policy is:
>
> > 1.  A policy statement, ordinance, regulation, or decision that is
> > officially adopted and promulgated by the municipality's lawmaking
> > officers or by an official to whom the lawmakers have delegated
> > policymaking authority;
> >
> > or
> >
> > 2.  A persistent widespread practice of city officials or employees,
> > which, although not authorized by officially adopted and
> > promulgated policy, is so common and well settled as to constitute
> > a custom that fairly represents municipal policy.  Actual or
> > constructive knowledge of such custom must be attributable to the
> > governing body of the municipality or to an official to whom that
> > body had delegated policymaking authority.  Actions of officers or
> > employees of a municipality do not render the municipality liable
> > under Section 1983 unless they execute official policy as above
> > defined.

"The policy is that of the city, however, where it is made by an official under

authority to do so given by the governing authority."  *Bennett v. Slidell*, 728 F.2d 762,

769 (5th Cir. 1984). "Policymakers act in the place of the governing body in the area of their responsibilities; they are not supervised except as to the totality of their performance." *Id.* at 769.

As stated previously, in order to find a municipality liable in a Section 1983 action, the constitutional deprivation must result from the implementation or execution of a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers. This includes customs and usages which have become so persistent and widespread as to be permanent and well settled so as to constitute a custom or usage with a force of law. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978).


## ANALYSIS

Tyson has conceded that Jones County had no official policy to mistreat detainees. Indeed, the Jones County Sheriff's Department had a written policy to the contrary which specifically provides,

    II.    POLICY

        OFFICERS OF THE JONES COUNTY SHERIFF'S DEPARTMENT SHOULD USE ONLY THE MINIMAL AMOUNT OF FORCE NECESSARY TO EFFECT AN ARREST OR TO CONTROL A PERSON. THE OBJECTIVE OF THE USE OF FORCE IS TO OVERCOME RESISTENCE OFFERED BY AN OFFENDER OR VIOLATOR.

Further, the POLICY FOR A LAWFUL ARREST specifically states,

AN OFFICER MAY USE THE AMOUNT OF FORCE NECESSARY TO EFFECT AN ARREST.

ONCE A SUSPECT HAS SUBMITTED AND BEEN HANDCUFFED, ANY ACT OF AGGRESSION TOWARDS HIM BY AN OFFICER SHALL IMMEDIATELY

8

CEASE. EXAMPLES OF AGGRESSION ARE HITTING, KICKING, SLAMMING ON THE PAVEMENT, ETC.

THIS POLICY SHALL BE FOLLOWED BY ALL PERSONNEL, ANY OFFICER GUILTY OF THE ABOVE OFFENSE COULD FACE DISCIPLINARY ACTION UP TO THE SEVERITY OF TERMINATION.

*See* GENERAL ORDER AND POLICY FOR A LAWFUL ARREST, May 23, 2000.

Thus, contrary to Tyson's allegations, Jones County at the time of and prior to September 10, 2005, had a formal policy specifically prohibiting the type of conduct the plaintiff alleges caused his injury. Therefore, the court finds that there is no genuine dispute as to any factual basis for a claim against Jones County under § 1983 for enactment or maintenance of unlawful formal policies or procedures.

Absent unlawful formal policies, the plaintiff can only rely on proof of unlawful informal policies to impart liability. Municipalities may establish informal customs or policies "even though such custom has not received formal approval through the bodies' official decision making channels." *Monell*, 436 U. S. at 690-91. However, an isolated incident is insufficient to establish such a custom. *Pineda v. City of Houston*, 291 F.3d. 325, 329 (5th Cir. 2002). In order to show that an informal custom exists, the plaintiff must demonstrate "the relevant practice is so widespread as to have the force of law." *Board of County Commissioners v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). To hold Jones County liable for an unlawful informal custom also requires Tyson to prove that policymakers had "actual or constructive knowledge" of the informal custom. *Pineda*, 291 F.3d at 330-31. Such knowledge must reflect a "deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d, 567, 579 (5th Cir.

9

2001).

The plaintiff responds with only argument and innuendo.  Tyson asserts that he can show clearly that an informal policy of abuse and neglect of arrestees by the Jones County elements of the Southeast Mississippi Drug Task Force existed through the willful ignorance of Jones County.  However, he offers no proof other than to contend that such a policy resulted in the conviction of three Jones County officers, including Chris Smith, on charges remarkably similar to what occurred to Tyson at the time of his arrest.

The plaintiff goes on to allege that it was an "open secret" at the time of the incident here that the Southeast Mississippi Drug Task Force was a "den of crime masquerading as a purposeful law-enforcement exercise."  He continues by alleging that the current Sheriff, Alex Hodge, was elected over the incumbent, Larry Dykes, "under whose tenure the lawlessness of the Sheriff's office occurred, precisely for this reason."  Tyson also asserts that Sheriff Dykes turned a "blind eye" to the alleged illegal activities, and that three Jones County officers pled guilty to criminal charges including falsifying evidence and using excessive force in arresting persons.  Thus, the plaintiff concludes that "Sheriff Dykes ratified and endorsed an informal policy contrary to the written policies of his own department."

However, the court concludes that Tyson has failed to offer any actual proof that Jones County officials were aware of any illegal conduct by officers at the time of Tyson's incident.  In fact, Tyson completely fails to rebut the contrary proof in the record that such officials were not aware of the illegal conduct of some officers.  The record in this case contains sworn testimony from Sheriff Dykes that he was unaware of any

10

illegal activities by officers until after Tyson's incident.  *See* Affidavit of Sheriff T. Larry

Dykes.  It was Sheriff Dykes who informed the Mississippi Bureau of Investigation of

suspected illegal behavior by Task Force officers.

Incorporated within Tyson's allegations are assertions that Jones County failed to

supervise its deputies adequately.  To prevail on such a claim, Tyson must show "(1)

the training or hiring procedures of the municipality's policymaker were inadequate, (2)

the municipality's policymaker was deliberately indifferent in adopting the hiring or

training policy, and (3) the inadequate hiring or training policy directly caused the

plaintiff's injury."  *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

Claims of inadequate supervision and control and claims of inadequate training

both generally require that a plaintiff demonstrate a pattern of deliberate indifference.

*Burge v. St. Tammany Parish*, 336 F. 3d 363, 370 (5th Cir. 2003)(proof of deliberate

indifference "generally requires a showing 'of more than a single incident of the lack of

training or supervision causing a violation of constitutional rights'")(quoting *Thompson v.

Upshure County*, 245 F 3d 447, 459 (5th Cir. 2001)(requiring "proof of more than a single

incident of the lack of training or supervision causing the violation of constitutional

rights.").   He "must demonstrate a pattern of violations and that the inadequacy of the

training is obvious and obviously likely to result in a constitutional violation."  *Cousin v.

Small*, 325 F.3d 627, 637 (5th Cir. 2003).  Without proof of such a pattern, even an

expert's opinion – which Tyson also lacks – is "generally not enough to establish

deliberate indifference."  *Thompson*, 245 F.3d at 459.

Applying only the first prong of this analysis reveals that Tyson has no proof of a

failure to train or supervise sufficient to survive summary judgment.  Merely alleging that

additional supervision would have prevented his injury is insufficient.  *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998).  Jones County requires all officers to be high school graduates and to complete the certification course and graduate from the Mississippi Law Enforcement Officers Training Academy ("MLEOTA"); to comply with the MLEOTA standards and procedures; and to conform to the Rules and Regulations of the Jones County Sheriff's Department.  Ex. "E" to motion, pages 2-6.

Tyson has presented no evidence that these standards are improper or deficient. Moreover, he has wholly failed to present any proof that his injury was causally connected to any alleged lack of supervision.  Without evidence of such a direct link, vague alleged deficiencies cannot defeat summary judgment.  *See Thomas v. Prevou*, 2008 U.S. Dist. LEXIS 1344 (S.D.Miss. Jan. 8, 2008) (plaintiff's allegation that officer used excessive force "because he was unsupervised" was insufficient to prove a failure to supervise or to defeat summary judgment).  The record in this case is devoid of any more than Tyson's unsupported allegations, which are insufficient to avoid summary judgment.

Without evidence to meet any requisite element to impose § 1983 liability, Tyson is left with only the "single incident exception" delineated by the Fifth Circuit.  This exception allows "in certain extreme circumstances, a single act by a municipal employee to form the basis of municipal liability apart from a pattern of unconstitutional activity."  *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005).  In order to prevail under such a theory, however, the plaintiff must show that the exact injury he suffered was a "highly predictable" consequence of Jones County's alleged policies or failure to supervise its deputies and that these failures were "'the moving force' that had

a specific causal connection to the constitutional injury" *Brown v. Bryan County, OK*, 219 F.3d 450, 461 (5th Cir. 2000) (defining this standard as "unmistakable culpability and clearly connected causation").

In this case, Tyson alleges mistreatment at the hands of individual officers, but provides no evidence that Jones County authorized or condoned such treatment, or was even aware it occurred.  He presents no proof his injury was due to lack of supervision by Jones County and offers no  evidence of a pattern of lack of supervision. As with the prior elements of liability under § 1983, Tyson has shown no proof to support his claims against Jones County.

The final claim presented by Tyson is under the Mississippi Tort Claims Act (the "MTCA"), which  waives the state's sovereign immunity for certain tort claims.  *See* Miss. Code. Ann. § 71-46-5 (1972).  However, Mississippi law preserves immunity for governmental entities (and employees acting within the course and scope of their employment) from claims arising out of acts or omissions of employees engaged in performance or execution of duties or activities related to police or fire protection.  Miss. Code. Ann. § 11-46-9 (1972).  This provision retains immunity for officers unless the employee acted in reckless disregard of the safety and well being of a person not engaged in criminal activity at the time of the injury.  *Id.*

The MTCA specifically states, however, that a governmental entity is not liable for any "misconduct by its employees which occur outside the course and scope of that employee's employment, such as conduct which constitutes 'fraud, malice, libel, slander, defamation or any criminal offense other than traffic  violations.'" *Cockrell v. Pearl River Valley Water Supply Dist.*, 865 So. 2d 357, 361 (Miss. 2004)(citing Miss.

13

Code Ann. §§ 11-46-5 (2) & 11-46-7 (2)).  In this case, Tyson seeks to impose vicarious liability on Jones County for claimed excessive force by deputies in subduing him.  The defendant is correct that for purposes of Jones County's entitlement to summary judgment, it is irrelevant whether such conduct actually occurred or whether the actions taken to subdue Tyson constituted excessive force.

Indeed, the court need not even resolve the issue of whether the officers were acting within the course and scope of their employment if they violated the regulations of the sheriff's office, since there can be no dispute that the actions of excessive force alleged by Tyson – if proven – would constitute criminal acts, from which liability against the county is precluded.  If proved, Tyson's allegations that deputies used excessive force in striking and kicking him in the head while he was handcuffed and lying on the ground would constitute criminal assault under Mississippi law.  Miss. Code Ann. § 97-3-7 defines assault as:

> (1)  A person is guilty of simple assault if he (a) attempts to cause of purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm; and, upon conviction, he shall be punished by a fine of not more than five Hundred Dollars ($500.00) or by imprisonment in the county jail for not more than six (6) months, or both. . . .

> (2)  A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; and, upon conviction, he shall be punished by imprisonment in the county jail for not more than one (1) year or in the Penitentiary for not more than twenty (20) years.

Thus, even if the plaintiff was able to provide sufficient evidence for a jury to conclude that Deputy Smith and the other unknown officer improperly beat him once he

was handcuffed, the law is clear such actions would constitute criminal acts.  Therefore, even if Tyson is able to prove that abuse by arresting officers occurred, Jones County is immune from liability for such criminal acts by virtue of Miss. Code Ann. § 11-46-5 (2) and Jones County is entitled to summary judgment as to Tyson's MTCA claims against it.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#62]** filed on behalf of Jones County, Mississippi is granted and the plaintiff's claims against Jones County, Mississippi are dismissed with prejudice.  A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 15th day of October, 2008.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE